**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| KATHY BARNETT, | : | Case No. 3:16-cv-00279 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Kathy Barnett brings this case seeking review of the Social Security Administration's denial of her application for Disability Insurance Benefits. The Administration denied Plaintiff's application through a decision by Administrative Law Judge (ALJ) George Michael Gaffaney in which he concluded that Plaintiff was not under a benefits-qualifying disability. This case is presently before the Court for review of ALJ Gaffaney's decision by way of Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #5).

Plaintiff asserted before the Administration that she had been under a disability

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

beginning on June 14, 2003.  She was then in her late thirties and was thus considered a "younger" person under social security law.  Her health problems include, at a minimum, depression, anxiety, and low-back pain.

Plaintiff testified during a hearing held by ALJ Gaffaney that she last worked at a pet store in 2011.  Her employment was terminated, she explained, for several reasons: she couldn't unload trucks; she signed a deposit slip that another employee had filled out; and she "[c]ouldn't go to work on storm days." *Id*. at 87.  This final reason was related to the tragic death of her four-year-old son in 2003, when he was struck by lightning.  In addition, Plaintiff got stuck at work during a storm in 2011.  Since then, she experienced daily anxiety attacks during which she cannot breathe.

Plaintiff did not leave her house on stormy days.  *Id*. at 96.  Indeed, she struggled every day to leave her house.  She did not go shopping, to the movies, to concerts, or out to eat.  She did not sleep well during the night because she feared not waking up.  She had daily headaches.  Her husband attempted to help her by blocking light from entering one room (a "black room") in their home.  *Id*. at 98.  She went into the black room because of her headaches and to feel safe.  *Id*. at 99.

Plaintiff experienced intrusive thoughts such as thoughts of suicide.  This occurred "[q]uite often," although she had not attempted suicide or formulated a plan.  *Id*. at 99-101.  Her long-term family doctor, Dr. Derksen, treated her with Cymbalta, which did not work, and Zoloft, which helped her "a little." *Id*. at 95.  She took Xanax for anxiety and this too helped "a little." *Id*.  She had tried counseling at one point but could not afford it.  Her side effects from medications included dizziness and headaches.  *Id*. at 106.

Plaintiff testified that she has memory loss that became worse after she began falling and hitting her head on the ground "like a seizure." *Id*. at 103. This occurred several times a day. She explained, "my head would just bounce off the floor, and since that happened I have no memory." *Id*. at 103. At this point during the ALJ's hearing, Plaintiff was crying. She testified that she cried "all the time." *Id*.

A vocational expert testified during the ALJ's hearing that there would be no full-time jobs available for a hypothetical person who would be absent from work three times a month, assuming the hypothetical person was the same age and educational background as Plaintiff and had her limited ability to perform light work. *Id*. at 115-17.

The medical evidence consists in part of Dr. Derksen's treatment records. In his June 2014 assessment of Plaintiff's mental-work abilities, *id*. at 834-40, Dr. Derksen reported that he had treated Plaintiff every three months since about May 2011. He diagnosed Plaintiff with depression, generalized anxiety disorder, and low-back pain. Plaintiff's symptoms consisted of anxiety mixed with depression, panic attacks, anhedonia, lack of motivation, and "compliance issues with medication due to the psychological issues that have occurred since the sudden death of her son from a lightning strike." *Id*. at 834. He noted that Plaintiff is chronically depressed and anxious, and "any stressful situation induces panic attacks." *Id*. at 835. Plaintiff's symptoms were moderate (between slight and severe). As defined by the form Dr. Derksen completed, moderate symptoms "could be tolerated but would cause a marked handicap of the activity precipitating the symptom." *Id*. at 836. Dr. Derksen also indicated that Plaintiff's symptoms would frequently interfere with her attention and concentration.

And he opined that her "underlying back pain combined with her psychological problems render her disabled." *Id*.

In May 2013, psychologist Dr. Kramer examined Plaintiff at the request of the state agency. *Id*. at 407-12. He reported at the outset that he did not have Plaintiff's records or other materials available to him. *Id*. at 407.

Dr. Kramer observed that Plaintiff's affect was sad and depressed. She was tearful throughout much of the examination. Dr. Kramer explained that she "was obviously anxious in today's examination. She was fidgety, restless, and shaky. She says that she does not like to leave the house especially if the weather is bad. She has not gone to a public place such as a grocery store since her son passed away in 2003. She reports panic attacks with shortness of breath and tearfulness and says that she gets scared and cannot breathe and feels as if she is going to choke….." *Id*. at 409-10.

Dr. Kramer noted that Plaintiff appeared to be a reliable historian. He explained, "She seems to be open and honest in sharing information and her self-report was consistent with the clinical impression obtained in today's interview." *Id*. at 411. Dr. Kramer diagnosed Plaintiff with panic disorder with agoraphobia and depressive disorder.

Dr. Kramer opined that Plaintiff could perform simple repetitive tasks (noting she appeared to have average intelligence), and her "tearfulness and anxiety would impair her social functioning somewhat." *Id*. at 412. He further reported that Plaintiff "does appear to be rather depressed and poorly motivated." *Id*.

4

Turning to ALJ Gaffaney's decision, he concluded Plaintiff was not under a disability by conducting the 5-step evaluation required by social security law. *See* 20 C.F.R. § 404.1520(a)(4). His more significant findings began with his conclusion that Plaintiff had several severe impairments—degenerative disc disease, depression, and anxiety—but her impairments did not automatically constitute a disability.[2] (Doc. #5, *PageID* #s 67-69). The ALJ then assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Doing so, the ALJ found that despite Plaintiff's impairments, she could still perform light work with many limitations, including the following limitations due to her mental impairments:

> [T]he claimant can do simple, limited, unskilled routine tasks, can only occasionally handle a change in a routine work setting, with no production rate pace, defined as strict quotas or time frames. The claimant requires supervision—must be reminded of tasks two times per day. The claimant limited to only occasional interaction with the coworkers and supervisors and no interaction with the public.

(Doc. #5, *PageID* #s 69-70). In his assessment of Plaintiff's residual functional capacity, the ALJ placed little weight on Dr. Kramer's opinions because (1) he was not provided Plaintiff's medical records and, therefore, he did not review them; (2) he did not perform any psychological testing during his examination of Plaintiff; (3) his findings and opinions merely reiterated, and were based entirely on, Plaintiff's subjective complaints;

---

[2] A social security applicant that meets or equals the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is automatically under a disability. *See* 20 C.F.R. §404.920(a)(iii); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

(4) he examined Plaintiff only once; and (5) his prognosis for Plaintiff's mental impairments was guarded. *Id*. at 73.

The ALJ further determined that, given Plaintiff's residual functional capacity, high-school education, work experience, and age, she could still perform a significant number of jobs available to her in the national economy. The availability of such jobs— "office helper," "order clerk," and "document preparer"—meant that Plaintiff was not under a benefits-qualifying disability. *Id*. at p. 20; *PageID# 60*.

The present judicial review of ALJ Gaffaney's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If ALJ Gaffaney failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). A conclusion is supported by substantial evidence when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff contends that the ALJ failed to provide all the necessary background information to Dr. Kramer—as required by 20 C.F.R. § 404.1517—before he examined

6

her. This is correct.

Section 404.1517 authorizes ALJs to refer claimants to a consulting medical source "to have one or more physical or mental examinations or tests…." The ALJ therefore had discretionary authority to refer Plaintiff to Dr. Kramer for a one-time examination. Although the referral was discretionary under § 404.1517, it triggered a mandatory procedural duty related to Plaintiff's medical records. The regulation unambiguously states, "We will also give the examiner any necessary background information about your condition." *Id.* The U.S. Court of Appeals for the Sixth Circuit has explained what constitutes "necessary background information":

> In the course of discussing "background information" for consultative examinations, the POMS [Program Operations Manual Systems] specifically instructs SSA employees to provide consultative examiners with "duplicates or summaries of relevant evidence such as ... [m]edical evidence of record including any medical opinion(s)."[3] Additionally, the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") instructs the ALJ or hearing office staff to supplement a request for a consultative examination with "[a] medical exhibits folder which contains evidence relating to the type of examination ordered with instructions for the State agency to send the folder to the consultative examiner for review."[4]

*Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888, 894-95 (6th Cir. 2016) (footnotes added).

Dr. Kramer wrote in his report, "No background records or other materials were available to [him]." (Doc. #7, *PageID* #407). Without background or medical records,

---

[3] Citing Soc. Sec. Admin., *DI 22510.017 Consultative Examination (CE) Appointment Notice,* https://secure.ssa.gov/apps10/poms. nsf/lnx/042251001 (last visited Oct. 15, 2015).

[4] Citing Soc. Sec. Admin., *Consultative Examinations and Tests,* Hearings, Appeals, and Litig. Law Manual, http://ssa.gov/OP_Home/hallex/I–02/I–2–5–20.html (last visited Oct. 15, 2015).

7

including treating physician Dr. Derksen's records, the ALJ failed to meet his mandatory obligation to provide Dr. Kramer with "necessary background information." 20 C.F.R. § 404.1517; *cf. Brantley*, 637 F. App'x at 895 (applying § 404.1517, POMS, and HALLEX to find the ALJ failed to provide consulting physician with "necessary background information."). The ALJ, moreover, compounded this error by using the fact that Dr. Kramer did not have and did not review Plaintiff's medical records as his first reason to discount his opinions. This was not only error, it was unreasonable for the ALJ to fail to meet his duty to provide Dr. Kramer with necessary background information, then fault his opinions for not reviewing Plaintiff's medical records.

The Commissioner contends, "Plaintiff does not show, as she must, that Dr. Kramer's examination of the medical records available at the time of his report could have reasonably resulted in a more favorable evaluation of Plaintiff's functioning." (Doc. #11, *PageID* #939). This misses the point because the lack of necessary background information impaired Dr. Kramer's "ability to present his conclusions with greater precision or bolster them with references to the medical evidence." *Brantley*, 637 F. App'x at 896. The record contained such evidence in Dr. Derksen's treatment records, at a minimum, from February 2007 to July 2013, which repeatedly document his treatment of Plaintiff for depression and anxiety. *See* Doc. #5, PageID #s 418-653.

The Commissioner's contention, moreover, misstates the harmless-error standard that applies to an ALJ's violation of a mandatory procedural rule. Given the same § 404.1517 error by an ALJ, *Brantley* explained:

> Not to reverse a decision that resulted from the ALJ's violation of the law—either negligently or otherwise—required for a fair decision would "afford the Commissioner the ability [to] violate the regulation with impunity and render protections promised therein illusory." *Id.* Furthermore, an agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process."

*Brantley*, 637 F. App'x at 896–97 (applying *Wilson*, 378 F.3d at 544, 546) (other citation omitted). The result here, as in *Brantley*, is the need to remand for proper consideration of Plaintiff's claims. *Id*. at 897.

In the end, it should be noted that the ALJ's error does not mandate the conclusion that Plaintiff is under a benefits qualifying disability. She is, however, entitled to a remand of this matter for further administrative proceedings because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *See Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *e.g., Blakley*, 581 F.3d at 410 (remanding for further administrative proceedings).

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's final decision concerning Plaintiff's March 15, 2013 application for Disability Insurance Benefits be vacated;

2. No finding be made as to whether Plaintiff Kathy Barnett was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

June 12, 2017                                           *s/Sharon L. Ovington*
                                                                           Sharon L. Ovington
                                                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).